## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Vitamin World, Inc., *et al.*,[1] | ) Case No. 17-11933 (KJC) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Objection Deadline: July 2, 2018 at 4:00 p.m. (ET)** |
| | ) **Hearing Date: July 9, 2018 at 11:00 a.m. (ET)** |
| | ) |
| | ) |

## DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 305(a), 349 AND 1112(b) OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER (A) APPROVING PROCEDURES FOR THE DISTRIBUTION OF CERTAIN FUNDS, (B) DISMISSING THE DEBTORS' CHAPTER 11 CASES, AND (C) GRANTING CERTAIN RELATED RELIEF

By this motion (this "**Motion**"), Vitamin World, Inc., and its affiliated debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors in possession (the "**Debtors**"), seek the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to sections 105(a), 305(a), 349 and 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "**Bankruptcy Code**"), (a) approving procedures for the distribution of certain funds, (b) dismissing the Debtors' chapter 11 cases, and (c) granting certain related relief. In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.

---

[1] Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Vitamin World, Inc. (2283); VWRE Holdings, Inc. (8915); VW Interholdings, Inc. (4744); VW Online, Inc. (8763); Precision Engineered Limited (USA) (0916); Vitamin World (V.I.), Inc. (9839); Vitamin Depot, LLC (6747); Vitamin World of Guam, LLC (2056); and Nutrition Warehouse, Inc. (5095). Debtors' mailing address is 4320 Veterans Highway, Holbrook, NY 11741.

2.      The is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory basis for the relief requested herein is sections 105(a), 305(a), 349 and 1112(b) of the Bankruptcy Code.

## BACKGROUND

5.      On September 11, 2017 (the "**Petition Date**"), the Debtors commenced their respective bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On June 20, 2017, the United States Trustee for Region 3 appointed the Official Committee of Unsecured Creditors (D.I. 115) (the "**Committee**").

7.      A more detailed description of the events leading to the commencement of these Chapter 11 Cases are set forth in the *Declaration of Frank Conley in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 2], and the *Supplement to Declaration of Frank Conley in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 161], and incorporated herein by reference.

8.      Although the Debtors initially intended to proceed with a plan of reorganization in connection with these Chapter 11 Cases, certain operational challenges and liquidity concerns caused the Debtors to pursue a sale of substantially all of their assets.

9.      On December 22, 2017, the Court entered an Order [D.I. 553] approving the sale (the "**Sale**") of substantially all of the Debtors' assets (the "**Acquired Assets**") to Vitamin World USA Corporation (the "**Purchaser**") pursuant to the Amended and Restated Asset Purchase Agreement dated December 21, 2017 (the "**Purchase Agreement**").  The Sale closed on January 19, 2018 (the "**Closing**").

10.      The Acquired Assets included "any avoidance actions under chapter 5 of the Bankruptcy Code relating to any Transferred Contract or trade vendor that Buyer will conduct business with, following the Closing;…"  *See* Purchase Agreement at § 1.1 (definition of "Acquired Assets").

11.      In addition to purchasing substantially all of the Debtors' assets, the Purchaser assumed the Debtors' obligations under certain executory contracts and unexpired leases and hired the majority of the Debtors' officers and employees (the "**Assumed Liabilities**").  The Debtors rejected any remaining executory contracts and unexpired leases which were not assigned to the Purchaser.

12.      Following the Closing, the Debtors' sole remaining officer and board member, Lawrence Perkins, assumed responsibility for the wind-down of the Debtors' estates (the "**CRO**").

13.      Since the Closing, the Debtors have focused on maximizing the value of any remaining assets and reconciling the alleged priority and administrative claims asserted against the Debtors' estates.

14.      As of the date of this Motion, the only remaining Debtors' assets of any material value are (a) the Debtors' estates' claims (the "**CLP Claim**") against CLP VW Holdings, LLC ("**CLP**") which are proposed to be settled under the *Motion of Debtors for Entry of Order*

*(I) Authorizing (A) the Compromise of Certain Claims with the Nature's Bounty Co. and NBTY*

*Manufacturing, LLC; and (B) the Compromise of Certain Claims with CLP VW Holdings, LLC*

*and (II) Granting Related Relief* (the "**NBTY / CLP Settlement Motion**"); and (b) the Debtors'

beneficial interest (the "**Credit Card Interest**"), if any, in the class action lawsuit known as <u>In re</u>

<u>Payment Card Interchange Fee and Merchant Discount Antitrust Litigation</u> (Case No. 1:05 md-

1720-JG-JO), filed in the United States District Court for the Eastern District of New York,

which are proposed to be sold pursuant to the *Debtors' Motion for Entry of an Order Authorizing*

*and Approving the Sale of Certain Litigation Claims* (the "**Credit Card Claim Sale Motion**").

<u>**RELIEF REQUESTED**</u>

15.      The Debtors request that the Court (a) dismiss these Chapter 11 Cases following

approval of the NBTY / CLP Settlement Motion and the Credit Card Claim Sale Motion and the

consummation of the transactions thereunder; and (b) approve procedures for the distribution of

the Remaining Assets (as defined below).  Granting the Motion will result in prompt resolution

of these cases and will minimize the burden on the Court and the parties to proceedings related to

these cases.

16.      As of June 13, 2018, the Debtors have approximately $1,260,000 in cash on hand

(the "<u>Cash</u>").  *See* Declaration of Matthew Pascucci at ¶ 4, attached hereto as **<u>Exhibit B</u>** (the

"**Pascucci Declaration**").

17.      Subject to Court approval of the NBTY / CLP Settlement Motion and the Credit

Card Claim Sale Motion and the consummation of the transactions thereunder, the Debtors will

receive net payments in the amount of, at least, $580,000.00 (the "**Settlement/Sale Proceeds**"

and together with the Cash, the "**Remaining Assets**").[2]  The Debtors expect to have limited other remaining assets.  *Id*. at ¶ 7.  The Debtors do not believe there are any other viable sources of recovery for these estates.  *Id*.

18.      Debtors believe that they owe approximately $1,013,589.12 in non-professional postpetition administrative claims ("Administrative Claims") as of June 13, 2018.  *Id.* at ¶ 8.

19.      With respect to professional fee claims (collectively, the "Professional Fee Claims"), the Debtors estimate that there are approximately $768,000 in unpaid fees and expenses among the Debtors' and Committee's professionals as of May 31, 2018. *Id.* In total, Professional Fee Claims could reach $1,221,000 with fees and expenses thus far incurred through the dismissal of these cases.  *Id.*

20.      In addition to the amounts above, based on a review of the claims filed in these cases and the Debtors' books and records as of June 13, 2018, there are priority claims of approximately $1,331,000, certain of which appear to be duplicative and or superseded by amended claims.  *Id.* at ¶ 9.  Unpaid secured claims total $25,000, certain of which may already have been paid. *Id.* at ¶ 10. As of April 5, 2018, general unsecured claims are estimated to be $9,565,001.63.[3]  *Id.* at ¶ 11.

21.      Due to the winding down of the Debtors' operations and estates and the sale of substantially all of the Debtors assets, it would be impractical and unrealistic for the Debtors to file and attempt to confirm a plan of reorganization or liquidation.  The only two remaining possibilities, therefore, are dismissal of the cases or conversion to chapter 7.

---

[2]      The purchase price for the Credit Card Interests, pursuant to a draft asset purchase agreement with a stalking horse purchaser, is $230,000.  Under the proposed settlement of the CLP Claims, CLP would pay to the Debtors $500,000, $350,000 of which will be available for payment to the Debtors' creditors.

[3]      Moreover, upon information and belief, some portion of the claims discussed in this paragraph may have been satisfied in connection with the Sale.

22.     Here, conversion to chapter 7 would benefit no party or creditor in these cases. The Remaining Assets would be used to pay chapter 7 administrative expenses and, accordingly, conversion to chapter 7 would only further diminish funds available to pay the claims of the Debtors' creditors.

23.     Accordingly, the Debtors believe the better solution is to dismiss these cases while distributing the Remaining Assets in the estate to holders of allowed secured, administrative, priority unsecured and, to the extent available, general unsecured claims as proposed in the Pascucci Declaration.  The Debtors would request that the Court retain limited jurisdiction over the final allowance of professional fees.

24.     In order to effectuate the dismissal, the Debtors propose to distribute the Remaining Assets.  Accordingly, the Cash, and the anticipated Settlement / Sale Proceeds would be deposited into a wind-down account established by the CRO (the "**Wind-Down Reserve**") for payment of (i) the unpaid Administrative Claims (which includes unpaid claims under section 503(b)(9) of the Bankruptcy Code and the fees and expenses of winding down the affairs of the Debtors),  (ii) accrued yet unpaid fees owing to the Office of the United States Trustee ("**UST Fees**"), (iii) Professional Fees Claims, (iv) unpaid secured claims, if any (v) to the extent available, priority unsecured claims, and (vi) to the extent available, general unsecured claims.

25.     Payment of the Wind-Down Reserve amounts shall be made in the following order:

   a)  First, to holders of unpaid Secured Claims;

   b)  Second, to holders of Administrative Claims, other than Professional Fee Claims;

    c)  Third, to holders of Administrative Claims comprised of Professional Fee Claims;

    d)  Fourth, to holders of priority unsecured claims; and

    e)  Fifth, to holders of unsecured claims.

26.  If at any time sufficient funds to pay a category of claims in full cease to be available under the Wind-Down Reserve, each claim in such category will be paid on a pro-rata basis.

27.  Administrative Claims will be paid in the amounts set forth on **Exhibit C** attached hereto.

28.  Once the Wind-Down Reserve has been established and all the UST Fees have been paid, the Debtors ask that the Court enter the Proposed Order dismissing the Chapter 11 Cases.

## APPLICABLE AUTHORITY

### A.    Dismissal of These Cases Under Section 1112(b) of the Bankruptcy Code

29.  The Court should approve the Motion because the Debtors have sold substantially of their assets, no longer have any operations, and have no realistic ability to confirm a plan of reorganization or liquidation.  Additionally, with the exception of the Settlement / Sale Proceeds, the Debtors have no remaining estate assets to collect. *See* Pascucci Declaration.  For the reasons stated herein, the Debtors submit that authority to make the proposed distributions outside of a plan of reorganization and in the context of an orderly dismissal of these chapter 11 cases is justified and warranted under the circumstances of these cases.

30.  Under section 1112(b) of the Bankruptcy Code, a court shall "convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, *whichever is in the best interests of creditors and the estates*, if the movant establishes cause."  11 U.S.C.

§ 1112(b) (emphasis added); In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984); In re Blunt, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999).  A determination of cause is made by the court on a case-by-case basis.  Albany Partners, 749 F.2d at 674.  The decision to dismiss or convert a case is particularly delegated to the bankruptcy court's sound discretion.  See In re Camden Ordinance Mfg. Co. of Arkansas, Inc., 1999 WL 587790, at *2 (Bankr. E.D. Pa. 1999) (citing In re Atlas Supply Corp., 837 F.2d 1061, 1063 (5th Cir. 1988)).  Therefore, it is clear that the Court is authorized to dismiss the Debtors' chapter 11 cases upon a showing of "cause."

31.    The legislative history of section 1112(b) of the Bankruptcy Code and relevant case authority indicate that a court has wide discretion to use its equitable powers to dispose of a debtor's case.  H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 57878; see also In re Preferred Door Co., 990 F.2d 547, 549 (10th Cir. 1993) (stating that a court has broad discretion to dismiss a bankruptcy case); In re Sullivan Cent. Plaza I, Ltd., 935 F.2d 723, 728 (5th Cir. 1991) (stating that a determination of whether cause exists under section 1112(b) of the Bankruptcy Code "rests in the sound discretion" of the bankruptcy court); In re Koerner, 800 F.2d 1358, 1367 & n.7 (5th Cir. 1986) (stating that a bankruptcy court is afforded "wide discretion" under section 1112(b) of the Bankruptcy Code); Albany Partners, 749 F.2d at 674 (same).

32.    Section 1112(b) of the Bankruptcy Code provides a nonexclusive list of 16 grounds for dismissal.    11 U.S.C. § 1112(b)(4)(A)-(P); Frieouf v. U.S., 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b) of the Bankruptcy Code's list is nonexhaustive); In re Blunt, 236 B.R. at 864 (same).  One such ground is where a party-in-interest shows that there is an "inability to effectuate a plan [of reorganization]." 11 U.S.C. § 1112(b)(2)(A); Preferred Door Co., 990 F.2d at 549; Sullivan Cent. Plaza I, 935 F.2d

at 728.  Inability to effectuate a plan arises when a debtor lacks the capacity to "formulate a plan

or carry one out" or where the "core" for a workable plan of reorganization "does not exist."  See

Preferred Door, 990 F.2d at 549 (quoting Hall v. Vance, 887 F.2d 1041, 1044 (10th Cir. 1989))

(finding an inability to effectuate a plan arises where debtor lacks capacity to formulate a plan or

carry one out); In re Blunt, 236 B.R. at 865 (finding cause to dismiss debtor's case under

section 1112(b)(2) of the Bankruptcy Code where "core" for a workable plan of reorganization

found to be nonexistent).  Accordingly, the Court may dismiss the Debtors' chapter 11 cases

because the Debtors are unable to effectuate a plan.

33.    Here, it is not practical for the Debtors to confirm a chapter 11 plan because the

Debtors have liquidated substantially all of their assets and have no remaining assets to

administer other than the amounts described above.  Substantially all of the Debtors' assets have

been sold and the Debtors are no longer operating.  Accordingly, there is no business to

reorganize, and an attempt to confirm a chapter 11 liquidation plan would be a waste of

remaining funds.  By continuing in bankruptcy, the Debtors could also incur additional

administrative expenses beyond their ability to pay.  In sum, the Debtors have met their burden

of proof to show that cause exists to dismiss these Chapter 11 Cases under section 1112(b) of the

Bankruptcy Code due to their inability to effectuate a plan of reorganization.

34.    Once a court determines that cause exists to dismiss a chapter 11 case, the court

must also evaluate whether dismissal is in the best interests of the estate and creditors.  See In re

Superior Sliding & Window, Inc., 14 F.3d 240, 243 (4th Cir. 1994); In re Mazzocone, 183 B.R.

402, 411 (Bankr. E.D. Pa. 1995), aff'd 200 B.R. 568 (E.D. Pa. 1996); In re Warner, 83 B.R. 807,

809 (Bankr. M.D. Fla. 1988).  A variety of factors demonstrates that it is in the best interests of

24622570.1 06/15/2018

the Debtors' estates and creditors to dismiss these Chapter 11 Cases and authorize the relief sought herein.

35.     A dismissal of the Debtors' chapter 11 cases meets the best interests of creditors test where a debtor has nothing left to reorganize and the debtor's assets are fixed and liquidated. See In re BTS, Inc., 247 B.R. 301, 310 (Bankr. N.D. Okla. 2000); In re Camden Ordinance Mfg. Co. of Arkansas, Inc., 245 B.R. 794, 799 (E.D. Pa. 2000) (finding that a reorganization to salvage a business which ceased doing business was not feasible); In re Brogdon Inv. Co., 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 case in part where there was "simply nothing to reorganize" and no reason to continue the reorganization).  As noted above, the Debtors have nothing left to reorganize, as all of the Debtors' assets have been liquidated other than the Cash on hand described above.

36.     Additionally, dismissal of these chapter 11 cases is warranted because the alternative—conversion to chapter 7—would not serve the best interests of the Debtors' estates and creditors for the reasons discussed above.  One element of the best interests tests focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy.  In re Clark, 1995 WL 495951, at 5 (N.D. Ill. 1995); In re Staff Inv. Co., 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993).  The prime criterion for assessing the best interests of the estate is the maximization of value as an economic enterprise.  See id.  Here, the dismissal will maximize the value of the Debtors' estates because conversion to chapter 7 would impose substantial and unnecessary additional administrative costs upon the Debtors' estates with no hope that these estates and creditors would receive more consideration than provided under this Motion.  Simply put, there is nothing for a Chapter 7 trustee to do here.

37.     Numerous courts, both in this district and throughout the country, have approved orderly dismissals under similar circumstances to the Debtors' cases, where the debtor lacks the requisite financial ability to confirm a chapter 11 plan and/or where the costs associated with plan confirmation would eliminate the possibility of a meaningful creditor recovery.  See, e.g., In re Fresh-G Restaurant Intermediate Holding, LLC, Case No. 16-12174, D.I. 1073 (Bankr. D. Del. 2017); In re Hospitality Liquidation I, LLC (f/k/a HSS Holding, LLC), Case No. 13-12740, D.I. 447 (Bankr. D. Del. 2014); In re KB Toys, Inc., Case No. 08-13269, D.I. 914 (Bankr. D. Del. 2009); In re CFM U.S. Corporation, et. al., Case No. 08-10668, D.I. 1097 (Bankr. D. Del. 2009); In re Wickes Holdings, LLC, et al., Case No. 08-10212, D.I. 1418 (Bankr. D. Del. 2009); In re Bag Liquidation, Ltd, Case No. 08-32096, D.I. 688 (Bankr. N.D. Tex. 2009); In re Levitz Home Furnishings, Inc., Case. No. 05-45189, D.I. 1167 (Bankr. S.D.N.Y. 2008); In re Princeton Ski Shop, Inc., et al, Case No. 07-26206, D.I. 546 (Bankr. D.N.J. 2008); In re Harvey Elecs., Inc., Case No. 07-14051, D.I. 177 (Bankr. S.D.N.Y. 2008); In re Dawahare's of Lexington, LLC, Case No. 08-51381, D.I. 316 (Bankr. E.D. Ky 2008); In re Scient, Inc., et al., Case No. 02-13455, D.I. 821 (Bankr. S.D.N.Y. 2006); In re CSI, Inc., et al., Case No. 01-12923, D.I. 284 (Bankr. S.D.N.Y. 2006); In re New Weathervane Retail Corp., 04-116349, D.I. 566 (Bankr. D. Del. 2005); In re Blades Board & Skate, LLC, Case No. 03-48818, D.I. 126 (Bankr. D.N.J. 2004).

**B.      Dismissal of These Cases Under Section 305(a)(1) of the Bankruptcy Code**

38.     Alternatively, cause exists to dismiss these chapter 11 cases pursuant to section 305(a) of the Bankruptcy Code, which provides, in pertinent part:

> (a)     The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

> > (1)     the interests of creditors and the debtor would be better served by such dismissal or suspension;

11 U.S.C. § 305(a).

39.    In applying section 305(a), courts have considered a wide range of factors, including, but not limited to:

(i.)    economy and efficiency of administration;

(ii.)    whether federal proceedings are necessary to reach a just and equitable solution;

(iii.)    whether there is an alternative means of achieving an equitable distribution of assets; and

(iv.)    whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves the interests in the case.

See In re Crown Village Farm, LLC, Case No. 09-11522 (KG), U.S. Bankr. LEXIS at *24 (Bankr. D. Del. June 12, 2009) (enumerating section 305(a) factors and denying motion only because dismissal or abstention would have a deleterious effect on the administration of the debtor's chapter 11 case "which would languish while core issues were tried elsewhere"); see also In re Mazzocone, 200 B.R. 568, 575 (E.D. Pa. 1996). However, "the exact factors to be considered and the weight to be given to each of them is highly sensitive to the facts of each individual case." Mazzocone, 200 B.R. at 575.

40.    Dismissal of these cases is warranted under section 305(a)(1) for the same reasons that "cause" exists to dismiss these cases pursuant to section 1112(b)—dismissal of the cases will effectuate an efficient administration of these estates and represents the least expensive and most equitable alternative for the remaining assets to be distributed. Indeed, other courts have approved dismissals similar to that proposed by the instant Motion under section 305(a) of the Bankruptcy Code. See, e.g., In re Scient, Inc., et al., Case No. 02-13455 (AJG), D.I. 821 (Bankr.

S.D.N.Y. 2006); In re CSI, Inc., et al., Case No. 01-12923 (REG), D.I. 284 (Bankr. S.D.N.Y. 2006).

41.    The Motion represents the only logical and expedient outcome for these Chapter 11 Cases.  Authorizing the distributions contemplated herein and allowing the dismissal of these Chapter 11 Cases furthers the efficient administration of the Debtors' estates and maximizes value.  The Committee has reviewed the Motion prior to its filing and has authorized the Debtors to represent that it supports the relief sought herein.

42.    For the reasons set forth above, the Debtors further request that, notwithstanding section 349 of the Bankruptcy Code, that the Court provide that all orders of the Court entered in these Chapter 11 Cases shall survive the dismissal of these Chapter 11 Cases.

<u>**NOTICE**</u>

43.    Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Linda J. Casey, Esq.); (ii) the Debtors' creditors; (iii) counsel to Wells Fargo Bank, National Association, Debtors' prepetition secured lender, (x) Riemer Braunstein LLP, Three Center Plaza, Suite 600, Boston, MA 02108 (Attn: Donald E. Rothman, Esq.) and Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036 (Attn: Steven E. Fox, Esq.), and (y) Ashby & Geddes, P.A. 500 Delaware Avenue, P.O. Box 1150, Wilmington, DE 19899 (Attn: Gregory Taylor, Esq.); (iv) counsel to the Official Committee of Unsecured Creditors, Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068 (Attn: Mary E. Seymour, Esq. and Bruce Buechler, Esq.) and Whiteford, Taylor & Preston LLC, The Renaissance Centre, 405 North King Street, Suite 500, Wilmington, DE 19801 (Attn: Christopher M. Samis, Esq.); (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service; (vii) the United States Attorney's Office for the District of Delaware; and (viii) any other party entitled to notice

pursuant to Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.  Under the circumstances, the Debtors respectfully submit that no other or further notice is necessary.

## **<u>NO PRIOR MOTION</u>**

The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

*[Remainder of Page Intentionally Left Blank]*

14

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court may deem just and appropriate.

Dated: June 15, 2018
      Wilmington, Delaware

SAUL EWING ARNSTEIN & LEHR LLP

*/s/ Mark Minuti*
Mark Minuti (DE Bar No. 2659)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899-1266
Telephone:  (302) 421-6800
Facsimile:  (302) 421-5873
mark.minuti@saul.com

-and-

KATTEN MUCHIN ROSENMAN LLP
Peter A. Siddiqui (admitted *pro hac vice*)
Paige E. Barr (admitted *pro hac vice*)
Allison E. Yager (admitted *pro hac vice*)
525 W. Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
Facsimile: (312) 902-1061
peter.siddiqui@kattenlaw.com
paige.barr@kattenlaw.com
allison.yager@kattenlaw.com

*Attorneys for Debtors
and Debtors in Possession*

24622570.1 06/15/2018