IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Vitamin World, Inc., *et al.*,[1] | ) | Case No. 17-11933 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Re: Docket No. 748 |
| | ) | |

**DEBTORS' RESPONSE TO MOTION OF**
**WINLAND CREDIT PARTNERS LLC TO CONVERT CASES**

Vitamin World, Inc., and its affiliated debtors (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby submit this response (the "Response") to the *Motion of Winland Credit Partners LLC to Convert Cases* [Dkt. No. 748] (the "Motion"). In support of this Response, the Debtors respectfully represent as follows:

**Introduction**

1. In March 2018, Winland Credit Partners LLC ("Winland") joined these Chapter 11 Cases by filing several claim trade notices evidencing its acquisition of certain claims filed against the Debtors.

2. Before it was even in this case for a month, Winland filed the Motion and asserts that cause exists to convert to chapter 7 pursuant to section 1112(b) of the Bankruptcy Code.

3. Cause does not exist to convert the Chapter 11 Cases and, therefore, the Motion should be denied.

---

[1] Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Vitamin World, Inc. (2283); VWRE Holdings, Inc. (8915); VW Interholdings, Inc. (4744); VW Online, Inc. (8763); Precision Engineered Limited (USA) (0916); Vitamin World (V.I.), Inc. (9839); Vitamin Depot, LLC (6747); Vitamin World of Guam, LLC (2056); and Nutrition Warehouse, Inc. (5095). Debtors' mailing address is 4320 Veterans Highway, Holbrook, NY 11741.

24616463.1 06/15/2018

2

4. The Debtors have sold substantially all of their assets (the "Sale") to Vitamin World USA Corporation pursuant to the Amended and Restated Asset Purchase Agreement dated December 21, 2017, and approved by the Court in an Order entered December 22, 2017 [Dkt. No. 553]. The Sale closed on January 19, 2018.

5. The Debtors no longer have any assets of material value and are no longer operating. The Debtors' sole remaining officer and board member (the "CRO") is in the process of reconciling asserted claims and winding down the Debtors' estates. Accordingly, contemporaneously with the filing of this Response, the Debtors have filed the *Debtors' Motion Pursuant to Sections 105(a), 305(a), 349 and 1112(b) of the Bankruptcy Code for Entry of an Order (A) Approving Procedures for the Distribution of Certain Funds, (B) Dismissing the Debtors' Chapter 11 Cases, and (C) Granting Certain Related Relief* (the "Motion to Dismiss").

6. Because dismissal is in the best interest of the Debtors' estates, the Debtors request that the Court deny the Motion and instead dismiss the Chapter 11 Cases as set forth in the Motion to Dismiss.

**Argument**

7. The movant has the burden to establish cause to convert a case under section 1112(b) of the Bankruptcy Code. *In re Gregory & Parker, Inc.*, Case No. 12-01382-8-SWH, 2013 WL 2285671 at *4 (Bankr. E.D.N.C. May 23, 2013). A bankruptcy court has "broad discretion" in determining whether to convert a chapter 11 case to chapter 7. *In re Wen-Kev Mgmt., Inc.*, No. 13-36436 (GD), 2014 WL 7370050 at *3 (D.N.J. Dec. 29, 2014).

### A. Substantial or Continuing Loss to or Diminution of the Estate

8. Winland has not established cause to convert under section 1112(b)(4)(A), because there is not a "substantial or continuing loss to or diminution of the estate." *See* 11. U.S.C. § 1112(b)(4)(A).

9. Notwithstanding its very limited interest in the availability of funds to eventually be distributed to unsecured creditors, Winland expresses unwarranted concern over the professional fees in these Chapter 11 Cases. Ironically, a great portion of the fees Winland criticizes were for legal services relating to the consummation of the Sale, which provided enormous value to the Debtors' estates. Those fees were justified and necessary and resulted in a favorable outcome for the benefit of the Debtors' estates.[2]

10. Moreover, the Debtors' professional fees in these Chapter 11 Cases have been relatively lean. Since the closing of the Sale, the Debtors have not burdened the Court with needless filings but have focused their attention on formulating an exit strategy and winding up these cases. A significant portion of the recent professional fees have been incurred only because of the filing of the instant Motion to Convert, which has necessitated several discussions with the Committee and others, in addition to the drafting of this Response. Additionally, the Court and the appointed Fee Examiner will have the opportunity to review all professional fees incurred in connection with these Chapter 11 Cases. Accordingly, Winland's concern over professional fees while in chapter 11 is unjustified.

11. In fact, some courts have found that the accrual of professional fees does not constitute a loss or diminution to the estate under section 1112(b)(4)(A). "[T]he accrual of liabilities are not the same as the incurring of actual out-of-pocket losses, such as the dissipation

---

[2] Winland ironically criticizes the fees of the Committee, the claims and noticing agent, and the fee examiner, each of whose retention and/or appointment is specifically required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of this Court.

3

of assets that diminishes the estate. Leaving the Debtors in possession of the chapter 11 estate is not risking some ever-diminishing pool of assets." *In re Gabriel Tech. Corp.*, Case No. 13-30340DM, 2013 WL 2318581 at *2 (Bankr. N.D. Cal. May 28, 2013) (finding no loss or diminution to the estate based on "accrual of fees of professionals employed by the Debtors and the Committee" where the debtors no longer had tangible assets or operations).

12. Converting these Chapter 11 Cases to chapter 7 would only result in the incurring of additional expenses as well as further delays in the administration of these cases and distributions to creditors. A chapter 7 trustee with no knowledge of the case would require substantial time and money to catch up on the background of the Debtors and the history of the cases, and to evaluate the Debtors' assets, labilities, potential causes of action, and countless other concerns. Of course, chapter 7 administrative expenses have priority over chapter 11 administrative expenses (11 U.S.C. § 726(b)), so that investigation will inevitably dilute and delay whatever stakeholders in these Chapter 11 Cases will recover. Such duplicative legal services are exactly what the Debtors' professionals have sought to avoid throughout these Chapter 11 Cases.

13. Additionally, conversion to chapter 7 would require the establishment of a new claims bar date. As a result of successful negotiations with the Committee and the U.S. Trustee, a claims bar date has already been established (and has expired) in these Chapter 11 Cases. The expenses that would be incurred to re-notify all creditors of a new bar date are simply unjustified.

14. Winland also asserts that conversion would allow an "objective trustee" to pursue certain claims "free of restrictions which may be imposed by release/exculpation provisions in a liquidating plan." *See* Motion to Convert at ¶ 25. This risk is unfounded and unjustified, and

4

Winland's presumption that the Debtors, the Committee, their respective professionals, and this Court will not act in the best interests of the estates is wrong.

15. Moreover, there are no longer any avoidance actions nor unencumbered assets for a chapter 7 trustee to pursue or recover. As of the date of this Response, the only remaining assets of material value are (a) the Debtors' estates potential claim (the "CLP Claim") against CLP VW Holdings, LLC ("CLP"), which is proposed to be settled pursuant to the *Motion of Debtors for Entry of an Order (I) Authorizing (A) the Compromise of Certain Claims with The Nature's Bounty Co. and NBTY Manufacturing, LLC; and (B) the Compromise of Certain Claims with CLP VW Holdings, LLC and (II) Granting Related Relief* (the "NBTY / CLP Settlement Motion"); and (b) the Debtors' beneficial interest (the "Credit Card Interest"), if any, in the class action lawsuit known as *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Case No. 1:05 md-1720-JG-JO), filed in the United States District Court for the Eastern District of New York, which is proposed to be sold pursuant to *Debtors' Motion for Entry of an Order Authorizing and Approving the Sale of Certain Litigation Assets* (the "Credit Card Claim Sale Motion").

16. Subject to Court approval of the NBTY / CLP Settlement Motion and the Credit Card Claim Sale Motion and the consummation of the transactions thereunder, the Debtors will thereafter have no other remaining assets for a chapter 7 trustee to pursue.

17. The Debtors and their creditors would be better served by an orderly dismissal of these Chapter 11 Cases rather than conversion to chapter 7. The CRO, who is already familiar with the inner workings of the Chapter 11 Cases and who has assumed responsibility for the wind-down of the Debtors' estates since the closing of the Sale, is in a better position than a chapter 7 trustee to wind down the Debtors estates and distribute funds in an efficient and

5

economical manner. Allowing the CRO to continue the wind down process will maximize the value of remaining assets, while involving a chapter 7 trustee at this point would be senseless waste of fees that could otherwise be distributed to creditors.

**B.     Likelihood of Rehabilitation**

18.     Winland also has not established cause to convert these Chapter 11 Cases based upon an "absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A).

19.     The fact that the Debtors have already sold their assets does not mandate conversion to chapter 7. Less than five months have passed since the closing of the Sale, and the Debtors are in the process of reconciling administrative expenses and priority claims and winding down their estates.

20.     As discussed above, the Debtors have liquidated substantially all of their assets and are no longer operating. Although there is no business to reorganize, conversion to chapter 7 would be a waste of remaining funds and could result in the Debtors incurring additional administrative expenses beyond their ability to pay. As set forth in the Motion to Dismiss, courts in this district have approved orderly dismissals under similar circumstances. *See*, *e.g.*, *In re Fresh-G Restaurant Intermediate Holding, LLC*, Case No. 16-12174, D.I. 1073 (Bankr. D. Del. 2017); *In re Hospitality Liquidation I, LLC (f/k/a HSS Holding, LLC)*, Case No. 13-12740, D.I. 447 (Bankr. D. Del. 2014); *In re KB Toys, Inc.*, Case No. 08-13269, D.I. 914 (Bankr. D. Del. 2009); *In re CFM U.S. Corporation, et. al.*, Case No. 08-10668, D.I. 1097 (Bankr. D. Del. 2009); *In re Wickes Holdings, LLC, et al.*, Case No. 08-10212, D.I. 1418 (Bankr. D. Del. 2009)

21.     Accordingly, cause does not exist to convert the Chapter 11 Cases, the Motion to Convert should be denied, and the Court should instead enter an order dismissing the Chapter 11 Cases.

|  |  |
|---|---|
| Dated: June 15, 2018<br>      Wilmington, Delaware | SAUL EWING ARNSTEIN & LEHR LLP<br><br>*/s/ Mark Minuti*<br>Mark Minuti (DE Bar No. 2659)<br>1201 N. Market Street, Suite 2300<br>P.O. Box 1266<br>Wilmington, DE 19899-1266<br>Telephone: (302) 421-6800<br>Facsimile: (302) 421-5873<br>mark.minuti@saul.com<br><br>-and-<br><br>KATTEN MUCHIN ROSENMAN LLP<br>Peter A. Siddiqui (admitted *pro hac vice*)<br>Paige E. Barr (admitted *pro hac vice*)<br>Allison E. Thompson (admitted *pro hac vice*)<br>525 W. Monroe Street<br>Chicago, IL 60661<br>Telephone: (312) 902-5200<br>Facsimile: (312) 902-1061<br>peter.siddiqui@kattenlaw.com<br>paige.barr@kattenlaw.com<br>allison.thompson@kattenlaw.com<br><br>*Attorneys for Debtors*<br>*and Debtors in Possession* |