## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Vitamin World, Inc., *et al.*,[1] | ) Case No. 17-11933 (KJC) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Sale Hearing Date: August 30, 2018 at 10:00 a.m. (ET)** |
| | ) **Sale Obj. Deadline: August 23, 2018 at 4:00 p.m. (ET)** |
| | ) |

**DEBTORS' MOTION FOR AN ORDER APPROVING THE SALE OF CERTAIN
ASSETS OF THE DEBTORS' ESTATES FREE AND CLEAR OF LIENS,
CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO
11 U.S.C. §§ 105 AND 363 AND RELATED RELIEF**

By this motion (this "**Motion**"), Vitamin World, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors in possession (the "**Debtors**"), seek the entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "**Proposed Order**"), pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "**Bankruptcy Code**"), approving the sale of certain assets of the Debtors' Estates to Oak Point Partners, LLC ("**Oak Point**") free and clear of liens, claims, interests, and encumbrances, and related relief.  In support of this Motion, the Debtors respectfully represent as follows:

### <u>Jurisdiction</u>

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and the Debtors confirm their consent pursuant to Local Rule 9013-l(f) of the Local Rules of Bankruptcy Practice

---

[1]      Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Vitamin World, Inc. (2283); VWRE Holdings, Inc. (8915); VW Interholdings, Inc. (4744); VW Online, Inc. (8763); Precision Engineered Limited (USA) (0916); Vitamin World (V.I.), Inc. (9839); Vitamin Depot, LLC (6747); Vitamin World of Guam, LLC (2056); and Nutrition Warehouse, Inc. (5095). Debtors' mailing address is 4320 Veterans Highway, Holbrook, NY 11741.

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") to entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code, as well as Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

<u>**Background**</u>

4.      On September 11, 2017, the Debtors commenced their respective bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage the property of their estates (collectively, "**Estates**") as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      In or about January 2018, the Debtors' sole remaining officer and board member, Lawrence Perkins, assumed responsibility for the wind-down of the Debtors' estates ("**CRO**").

6.      The CRO has administered the Debtors' Estates for the benefit of their creditors and is now in the process of winding down the administration of these Chapter 11 Cases.

7.      On July 9, 2018, the Court entered an order approving a process for paying certain claims and ultimately dismissing the Chapter 11 Cases.

8.      In furtherance of such paying such claims, the Debtors are engaged in efforts to ensure that the maximum value of the Estates' remaining assets is realized, which efforts include pursuing the sale of any remaining assets.

9.      The Debtors have determined that there may exist property of the Debtors' Estates, consisting of known or unknown assets or claims, which have not been previously sold, assigned, or transferred (collectively, "**Remnant Assets**").  The Debtors have determined that the cost of pursuing the Remnant Assets will likely exceed the benefit that the Estates would possibly receive on account of the Remnant Assets.

10.     Remnant Asset sales have become commonplace at the close of commercial bankruptcy cases because they allow for additional funds to be brought into the estate, while simultaneously avoiding the expense and burdens associated with reopening cases for later-discovered assets. Such sales provide a prudent way to fully and finally administer all assets of the Debtors' Estates.

11.     The Debtors and Oak Point have negotiated an agreement ("**Purchase Agreement**") for the sale of the Remnant Assets, substantially in the form attached hereto as **Exhibit 1** to the Proposed Order.

### Requested Relief

12.     By this Motion, the Debtors seek the entry of an order pursuant to sections 105 and 363(b), (f), and (m) of the Bankruptcy Code, as well as Bankruptcy Rule 6004, (a) authorizing the Debtors to sell the Remnant Assets free and clear of all liens, claims, interests, and encumbrances; and (b) approving the terms of the Purchase Agreement.

13.     The Purchase Agreement generally provides for an aggregate purchase price of $17,500 ("**Purchase Price**") to be paid by Oak Point to the Debtors for the benefit of the Debtors' Estates.

14.     In accordance with the Purchase Agreement, the Remnant Assets do not include (b) cash held by the Debtors for distribution to creditors and professionals; (b) any and all

3

Goods[2] (e.g., office furniture) of the Debtors; (c) the following anticipated refunds, which are expected to be paid to the Debtors imminently: (i) proceeds of that certain Puerto Rico tax escrow owed to the Debtors by Vitamin World USA Corporation; (ii) approximately $100,000 in pre-paid sales taxes from the Commonwealth of Puerto Rico; and (iii) approximately $16,000 in overpayments and pre-paid sales taxes from the State of Georgia; (d) any and all refunds due to or received by the Debtors related to federal, state, or local income tax returns for the 2017 tax year (for the avoidance of doubt, this clause (d) includes, but is not limited to, any and all funds remaining or returned to the Debtors after application of such funds to federal, state, or local taxes owed or paid by the Debtors for the 2018 tax year); and (e) the Purchase Price for the Remnant Assets.

15.      In the business judgment of the Debtors and CRO, the Purchase Price represents a fair and reasonable sales price for the Remnant Assets, and represents the highest and best offer for the sale of the Remnant Assets.  The Debtors have conducted due diligence and remain unaware of the existence of any Remnants Assets, and certainly none that could return value to the Estates greater than the Purchase Price.  Therefore, the benefit of receiving immediate payment for the Remnant Assets outweighs the potential benefit of retaining the Remnant Assets. Finally, the Debtors believe that the cost of pursuing the Remnant Assets will likely exceed the benefit that the Estates would possibly receive.

**Bidding Procedures**

16.      Contemporaneously herewith, the Debtors have filed the *Notice of Debtors' Motion for an Order Approving the Sale of Certain Assets of the Debtors' Estates Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to 11 U.S.C. §§ 105 and 363 and*

---

[2]      The term "Goods" as used herein shall have the meaning ascribed to it under § 9-102(a)(44) of the Uniform Commercial Code.

4

*Related Relief* ("**Notice**"), which establishes a deadline by which objections or responses to this

Motion must be filed with the Court ("**Response Deadline**").

17.     While the Debtors are prepared to consummate the sale of the Remnant Assets to

Oak Point pursuant to the terms set forth herein and in the Purchase Agreement, in the event a

party other than Oak Point (each, a "**Competing Bidder**") wishes to purchase the Remnant

Assets, the Debtors request that the Court approve the following overbid procedures

(collectively, "**Bidding Procedures**"):

> a.     Each Competing Bidder who wants to participate in the overbid process must notify the Debtors of her intention to do so in accordance with the Notice on or before the Response Deadline;
>
> b.     the first overbid for the Remnant Assets by a Competing Bidder must be at least $5,000 more than the Purchase Price, or a total of $22,500;
>
> c.     each Competing Bidder must submit a cashier's check to the Debtors in the amount of such Competing Bidder's first overbid at the time such overbid is made;
>
> d.     each subsequent overbid for the Remnant Assets must be in additional increments of $1,000;
>
> e.     the bidder must purchase the Remnant Assets under the same terms and conditions set forth in the Purchase Agreement, other than the Purchase Price; and
>
> f.     in the event of an overbid that meets the foregoing conditions, the Debtors will schedule an auction of the Remnant Assets in advance of the hearing date and will request that the Court approve the winning bidder at the auction as the purchaser at the hearing on the Motion.

18.     The Debtors believe that the sale of the Remnant Assets in accordance with the

terms of the Purchase Agreement, and as provided herein, serves the best interests of their

Estates and creditors, as the sale will allow the Debtors to realize additional funds for the benefit

of the Estates.  Accordingly, the sale to Oak Point should be approved as requested.

## **Authority for Requested Relief**

19.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

20.     To approve the use, sale or lease of property outside the ordinary course of business, the Court must find that such sale is supported by the sound business judgment of the debtor or trustee, as the case may be.  *See In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbott's Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986) (requiring good faith purchasing); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of a debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); and *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith.").

21.     A showing of sound business judgment, in turn, need not be unduly exhaustive; instead the trustee or debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

6

Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. *See Lionel*, 722 F.2d at 1071. Bankruptcy courts are given substantial discretion in deciding whether to authorize a sale of a debtor's assets outside of the ordinary course of business. *See In re Chateaugay Corp.*, 973 F.2d 141, 144 (2d Cir. 1992).

22.     The Debtors submit that the sale of the Remnant Assets pursuant to the Purchase Agreement represents a prudent and proper exercise of business judgment under the circumstances, and is in the best interests of the creditors of their Estates. Specifically, the Purchase Agreement was negotiated at arm's length and in good faith, and the Debtors believe that the Purchase Price is reasonable and represents fair value. Indeed, the Debtors are not aware of any future assets or claims that may be liquidated, obtained or otherwise administered, and absent the sale to Oak Point, the Debtors' Estates would not realize any benefit on account of the Remnant Assets. Therefore, the Debtors respectfully request that the Court approve the sale of the Remnant Assets to Oak Point.

23.     Moreover, based on the foregoing, Oak Point should be deemed a good faith purchaser. Although the Bankruptcy Code does not define "good faith purchaser," the United States Court of Appeals for the Third Circuit construing section 363(m), has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'." *In re Abbott's Dairies of Pa., Inc.*, 788 F.2d at 147; *see also In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); and *In re Vanguard Oil & Serv. Co.*, 88 B.R. 576, 580 (E.D.N.Y. 1988). A declaration of Matthew Pascucci in support of the Sale has been attached hereto as **Exhibit B**.

24.     Additionally, section 363(f) of the Bankruptcy Code permits a debtor to sell assets free and clear of all interests which may be asserted against such assets, with any such interests

7

attaching to the net proceeds of the sale, if subject to the rights and defenses of a debtor with respect thereto:

      a.     Applicable nonbankruptcy law permits sale of such property free and clear of such interest;

      b.     Such entity consents;

      c.     Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

      d.     Such interest is in bona fide dispute; or

      e.     Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  As section 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to section 363(b), it is only necessary to meet one of the five conditions of section 363(f).  To the extent that there are interests that may be asserted in the Remnant Assets, the Debtors believe that one or more of the aforementioned conditions have been satisfied.

25.    Finally, the proposed Bidding Procedures are appropriate and should be approved by the Court.  Courts have routinely held that when the sale of assets in bankruptcy is done on a competitive bidding basis, as is proposed herein, it is appropriate to require parties submitting competing bids to submit bids that exceed the existing bid by a specified amount. *See, e.g.*, *In re Financial News Network Inc.*, 931 F.2d 217 (2d Cir. 1991).  Oak Point has expended, and will continue to expend, considerable time, money, and energy pursuing the purchase of the Remnant Assets as proposed herein, and has engaged in good faith, arm's length negotiations with the Debtors. Moreover, a nominal overbid will not justify the expense of an auction.

8

**Waiver of Stay of Order**

26.     To successfully implement the Purchase Agreement, the Debtors also seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).

**Notice**

27.     Notice of this Motion has been given to the Office of the United States Trustee, Oak Point, and all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit, and request that this Court determine, that such notice is proper and adequate; no further notice is required; and that other and further notice be waived.

WHEREFORE, the Debtors respectfully request entry of an order authorizing the sale of the Remnant Assets pursuant to the terms of the Purchase Agreement, waiving the fourteen-day stay under Bankruptcy Rule 6004(h), and granting such other and further relief as this Court deems just and proper.

24758097.1 08/07/2018

Dated: August 7, 2018          SAUL EWING ARNSTEIN & LEHR LLP
      Wilmington, Delaware

*/s/ Mark Minuti*
Mark Minuti (DE Bar No. 2659)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899-1266
Telephone:  (302) 421-6800
Facsimile:  (302) 421-5873
mark.minuti@saul.com

-and-

KATTEN MUCHIN ROSENMAN LLP
Peter A. Siddiqui (admitted *pro hac vice*)
Paige E. Barr (admitted *pro hac vice*)
Allison E. Yager (admitted *pro hac vice*)
525 W. Monroe Street
Chicago, IL 60661
Telephone:  (312) 902-5200
Facsimile:  (312) 902-1061
peter.siddiqui@kattenlaw.com
paige.barr@kattenlaw.com
allison.yager@kattenlaw.com

*Attorneys for Debtors*
*and Debtors in Possession*

10

24758097.1 08/07/2018